## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MARIMAR MARTINEZ,

     Defendant.

25 CR 636

Judge Georgia N. Alexakis

## MOTION FOR A PROMPT HEARING
## REGARDING DESTRUCTION OF EVIDENCE

Defendant, **Marimar Martinez**, by and through her attorneys, **Cheronis & Parente LLC**, pursuant to the Due Process and Effective Assistance of Counsel provisions of the Fifth and Sixth Amendments to the Constitution of the United States, Rules 2 and 16 of the Federal Rules of Criminal Procedure, as well as the other authority cited herein, respectfully requests that the Court set a prompt[1] hearing to determine the full scope of the circumstances surrounding the Government's handling and potential alteration and/or destruction of critical evidence and whether this action was done out of bad faith or just extreme negligence which will inform Ms. Martinez's next request from this Court. In support thereof, Ms. Martinez states as follows:

---

[1] Because one remedy available to the defense if bad faith is established would be dismissal of the indictment the defense respectfully requests that a hearing be set on this matter as soon as possible. *See United States v. Bohl*, 25 F.3d 904, 914 (10th Cir. 1994) (finding dismissal of indictment to be appropriate remedy when government acted in bad faith by destroying exculpatory evidence).

## I.    Background

1.    Ms. Martinez is charged with one count of forcibly impeding, intimidating, and interfering with U.S. Customs and Border Patrol Agents (BPA's), while they were engaged in and in account of their performance of their official duties, and such acts involved a deadly or dangerous weapon, namely, a motor vehicle, in violation of 18 U.S.C. § 111(a)(b). Dkt. # 22.

2.    The basis of the Government's criminal charge stems from a car accident that occurred on October 4, 2025, near the intersection of 39th Street and Kedzie Avenue, involving what the Government referred to in the criminal complaint as a silver Chevrolet Tahoe (the "CBP Vehicle") and the cars driven by Marimar Martinez (the "Martinez Vehicle") and Anthony Ruiz (the "Ruiz Vehicle").

3.    The Government continues to allege this incident involved a "ramming" of the CBP Vehicle by both the Martinez Vehicle and the Ruiz Vehicle.[2]

4.    Ms. Martinez's position is that there was never any ramming of the CBP Vehicle by the Martinez Vehicle; rather, the CBP Vehicle swerved to the left and sideswiped her vehicle. Law enforcement further alleges that the Ruiz Vehicle also rammed the CBP Vehicle.

---

[2] *See* Application to Stay the Order Issued by The United States District Court for the Northern District of Illinois and Request for an Immediate Administrative Stay, *Donald J. Trump, President of the United States, et. al. v. State of Illinois and City of Chicago* (U.S. No. 25A443) (filed October 17, 2025) (Referring to this incident alleging, "[t]wo cars then *rammed* directly into the government vehicle.") (emphasis added);https://www.dhs.gov/news/2025/10/04/vehicles-again-used-weapon-attack-against-dhs-law-enforcement-officers-forced-fire (last accessed October 19, 2025).

5.     Regardless of who hit whom first, what is undisputed is that after contact was made, both the Martinez Vehicle and the CBP Vehicle stopped. The driver of the CBP Vehicle, whom the government has identified as "BPA 1," jumped out of the CBP Vehicle and, within 2 seconds, fired 5 bullets at Ms. Martinez and her vehicle, striking Ms. Martinez multiple times.[3]

6.     Ms. Martinez was able to drive to a safe place where she pulled over and called 911 to report the ICE shooting.

7.     Ms. Martinez had her initial appearance and detention hearing on October 6, 2025. At the hearing, the government asked that Ms. Martinez be detained as a danger to the community. After a detention hearing, the Magistrate Judge ordered her release on a $10,000 signature bond and other limited conditions.

---

[3] Through official Government press releases issued the same day as the shooting, the Government attempted to justify this shooting claiming that BPA 1 shot "an armed U.S. citizen" who the Agents were "forced to deploy their weapons and fire[] defensive shots at." *See* https://www.dhs.gov/news/2025/10/04/vehicles-again-used-weapon-attack-against-dhs-law-enforcement-officers-forced-fire (last accessed October 19, 2025). Based on recently received discovery this description of Ms. Martinez as "an armed U.S. citizen" is demonstrably false. The Government provided the defense with a photograph of Ms. Martinez's purse in the condition it was found inside the Martinez Vehicle clearly depicting her firearm, for which she had a valid CCL license for, at the bottom of her purse, inside a snapped closed bright pink holster.

8. Since October 4, 2025, counsel for Ms. Martinez had multiple phone calls with the original assigned AUSA (AUSA 1), as well as the newly assigned AUSA (AUSA 2), regarding this case. Counsel recalls asking AUSA 1 to view the CBP Vehicle and the Martinez vehicle primarily because he wanted to assess the actual damage from this alleged "ramming" and see exactly where the bullets hit Ms. Martinez's car.[4]

9. On October 16, 2025, at approximately 10:02 A.M., counsel for Ms. Martinez received a telephone call from AUSA 2. AUSA 2 explained that counsel for Ms. Martinez would be able to go to the FBI Evidence Garage the following day as requested to examine the Martinez Vehicle and Ruiz Vehicle, but the CBP Vehicle was no longer in FBI custody and had been returned to BPA 1 who drove it back home to Maine.[5]

---

[4] Defense counsel has attempted to contact AUSA 1 to pinpoint the date of this initial request but has been unable to get in contact with AUSA 1. Regardless, counsel submits that the Magistrate Judge's Rule 5(f) order entered on October 6, 2025 (Dkt # 4), as well as Rule 16, the Due Process Clause, and case law requires the Government to preserve exculpatory evidence which it failed to do by releasing the CBP Vehicle before defense experts could examine the vehicle. *See California v. Trombetta*, 467 U.S. 479 (1984).

[5] The Government continues to refuse to provide counsel with a city, or even region of Maine, where BPA 1 drove the vehicle to. Because Maine is a State of approximately 35,385 square miles it would be helpful to know approximately how far and how long BPA 1 drove the CBP Vehicle for purposes of analyzing the potential destruction of evidence issue and yet another reason defense counsel requests a prompt hearing on this matter.

10.     After this shocking disclosure by the Government, defense counsel immediately brought this issue to the attention of the Court and requested that the CBP Vehicle be brought back to Chicago immediately on a flatbed truck so defense counsel could examine the vehicle and have it analyzed by an expert witness for purposes of obtaining exculpatory evidence regarding the initiation of contact by the CBP Vehicle. While no timetable has yet been provided, defense counsel presumes the CBP Vehicle will be returned to the FBI Evidence Garage promptly.

11.     On October 17, 2025, counsel for Ms. Martinez, as well as counsel for Mr. Ruiz, went to the FBI Evidence Garage to examine the Martinez Vehicle and the Ruiz Vehicle. *Ironically*, prior to being allowed into the FBI Evidence Garage counsel was lectured by the FBI Evidence Technician that nobody was to get closer than two feet of the vehicles and nobody was allowed to touch either of the vehicles. The FBI Evidence technician clarified that this was to preserve the integrity of the evidence. Such a stern warning further demonstrates the absurdity that someone from the government allowed the vehicle at the center of this dispute, which the Government claims was "rammed" which is the premise of the assault claim, to be driven out of the FBI Evidence Garage without ever notifying defense counsel or allowing their expert to examine the vehicle.

12.     Regardless of where in Maine BPA 1 drove to the CBP Vehicle, he likely travelled well over 1,000 miles and presumably had no FBI evidence technician with him warning of the various pitfalls of proper evidence preservation, or that no one

should be within two feet of his vehicle. What evidence has been lost or altered remains unknown.

## II.    Applicable Law

13.    The government must preserve apparently exculpatory evidence. *California v. Trombetta*, 467 U.S. 479 (1984). "To be considered 'apparently' exculpatory, the exculpatory nature of the evidence must be apparent before it is destroyed." *McCarthy v. Pollard*, 656 F.3d 478, 485–86, (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)). The right not to have exculpatory evidence deliberately destroyed stems directly from the right to disclosure of exculpatory evidence identified in *Brady v. Maryland*. *Armstrong v. Daily*, 786 F.3d 529, 540 (7th Cir. 2015). These rights are all grounded in the due process guarantee of fundamental fairness in criminal prosecutions.

14.    The 7th Circuit has consistently applied the standard set forth in *Youngblood* to spoliation claims in criminal cases. Under this standard, a due process violation occurs if (1) the government acted in bad faith, (2) the exculpatory nature of the evidence was apparent before its destruction, and (3) the defendant could not obtain the same evidence anywhere else. *United States v. Cherry*, 920 F.3d 1126 (2019). Bad faith requires proof of conscious wrongdoing and turns on the government's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *McCarthy v. Pollard*, 656 F.3d 478 (2011).

### III.   DISCUSSION

15.   Ms. Martinez is charged with one crime—assaulting a federal officer with a deadly weapon (the Martinez Vehicle). The government has made clear this assault is premised on her "driving into and striking the CBP Vehicle" (Complaint at 2). The Government has known from at least the initial appearance on October 5, 2025, that Ms. Martinez's claim is that the CBP Vehicle swerved into her vehicle.

16.   For the exact same reasons that defense counsel was not allowed within two feet of the Martinez and Ruiz vehicles during their visit to FBI Evidence Garage on October 17, 2025, the CBP Vehicle should have been held under the same protocols until at least defense counsel and their expert witness were allowed to examine the vehicle for exculpatory evidence to support the claim that it was the CBP Vehicle which struck the Martinez Vehicle.

17.   The Government has yet to provide defense counsel with even basic information about exactly when the CBP Vehicle was released from the FBI Evidence Garage, who authorized the release of this critical piece of evidence without notifying defense counsel, and what if any changes were made to the vehicle after it was released from FBI custody.

18.   The Government, who had the option to use up to 5 years to investigate this case and make sure they had a clear understanding of the facts, chose to charge Ms. Martinez with a same day criminal complaint and indict her just five days later, now cautions defense counsel patience while they provide answers on their own timetable.

19.     This is simply no longer acceptable. Patience has already resulted in the potential destruction of critical evidence as BPA 1 was allowed to remove the CBP Vehicle from the well-guarded FBI Evidence Garage and head out on the public highways from Chicago east to the Atlantic Ocean. If it is the Government's position that the BPA 1 having his car for convenience trumps Ms. Martinez's right to have the ability to examine critical evidence in this case, they should say so in their response.

20.     To date, the Government has not disclosed who authorized the release of the CBP vehicle. Regardless, the removal of the CBP Vehicle from the FBI's Evidence Garage prior to inspection is unacceptable. Whether this was sheer negligence or something more is significant considering the importance of the evidence at issue.

21.     While the damage may already be done, as the evidence, if altered, can never be restored to its relevant condition, a hearing is necessary to determine how this occurred and to what extent the vehicle was altered.

For the foregoing reasons, Ms. Martinez, through counsel, respectfully requests a prompt hearing on this issue.

Respectfully submitted,

/s/ Christopher V. Parente

**Christopher V. Parente**
Attorney for Ms. Martinez

**Cheronis & Parente LLC**
140 S. Dearborn Street, Suite 404
Chicago, IL 60603
(312) 663-4644
cparente@cheronislaw.com