IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  v.  MARIMAR MARTINEZ,  Defendant. | 25 CR 636  Judge Georgia N. Alexakis |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A PROMPT HEARING <u>REGARDING DESTRUCTION OF EVIDENCE</u>**

The Government's response is little more than a one-sided narrative of events surrounding the release and repair of the CBP Vehicle which further illustrates the importance of the adversarial nature of our justice system where both sides are allowed to examine critical evidence and a person charged with a felony offense need not wholeheartedly rely on the government's narrative or evidence analysis.

The government's last-minute attempt to control the narrative and short circuit this hearing by telling the Court that the FBI took some photographs and paint chips[1] so there is "nothing to see here" demonstrates the absurdity of their handling of this situation. Fortunately, that is not how the justice system works-

---

[1] The taking of paint chips further illustrates that the FBI *knew* the evidentiary value of the CBP Vehicle and yet inexplicably allowed it to be driven out of the FBI Evidence Garage a few short hours after it was involved in an alleged ramming assault and shooting of a U.S. Citizen without preserving it for inspection by defense counsel. Defense counsel can think of no other situation where the FBI takes forensic evidence from an object and fails to preserve the object for further examination and testing by the defense.

where all defendants, Ms. Martinez included, are allowed to inspect critical evidence, which is why agents, and prosecutors, are routinely trained on evidence preservation issues.

The government's response includes a version of events section titled "Criminal Charges" summary of the facts. This section curiously starts with the October 9 indictment, but completely fails to mention the October 5, 2025, filing of the criminal complaint, as well as the corresponding detention hearing which took place the same day.[2] Luckily for Ms. Martinez it is much more difficult for the Government to "buff out" Pacer than it is a 2015 silver Chevy Tahoe.

Ms. Martinez's initial appearance before Judge McShain on October 6 put the government on notice of both the factual dispute regarding the "ramming" of the Chevy Tahoe and of the need to preserve the CBP Vehicle.[3]

A simple glance at the criminal complaint (R. 1) demonstrates the critical importance of the CBP Vehicle in this case. The complaint itself charges Ms. Martinez (and Mr. Ruiz) with "assault" of the agents based on the alleged "striking" of the Tahoe multiple times by Martinez and Ruiz. The complaint includes two photos the FBI took of the CBP vehicle depicting damage (which is now no longer present) further illustrating the importance of the CBP vehicle in this case.

---

[2] The government sought to have Ms. Martinez detained as a "danger to the community" based on her ramming of the CBP Vehicle which was apparently "rammed" so soft that it was able to be driven home within a few hours of the "ramming" and corresponding shooting of Ms. Martinez by BPA 1.

[3] The defense is still unclear of the exact date the CBP Vehicle was repaired but it was certainly well after Ms. Martinez's initial appearance and detention hearing.

Second, to the extent the government was somehow unsure of the importance of the CBP Vehicle based on their own criminal complaint, they certainly would have been sure after the detention hearing that also occurred on October 6, 2025 (R. 19). During the hearing, the defense made clear the facts regarding the collision were in dispute:

> **PARENTE**: I'll start as well with the nature and circumstances of the offense. Judge, I heard you in the last hearing. These are very serious offenses. We get that. But for this case specifically, **the facts are in dispute**. What you are hearing from the government -- and the government is not batting anywhere near a thousand in accuracy on their description of these kinds of cases in this district. **It is not correct what they have said.**

(R. 33, at 9:20-10:2) (emphasis added).

> . . .
>
> So after watching this video, which shows nothing what they are saying -- I understand they are relying on what the agents are telling them, but the video does not support what is being said. When I watched the video after this agent says do something, bitch, **I see the driver of this vehicle turn the wheel to the left, which would be consistent with him running into Mrs. Martinez's vehicle**, okay. And then seconds later he jumps out and just starts shooting.

(*Id*. at 10:22-11:5) (emphasis added).

> . . .
>
> The weight of the evidence, your Honor has already mentioned, that's the least important factor. Again, I argue -- I have been watching the video. **To me it shows that the agent turns to the left, which is where she would be**.

(*Id*. at 13:5-8) (emphasis added).

Clearly then, undersigned counsel signified the disputed nature of the conduct, specifically tied to the ramming allegation- and the government was on notice that the damage to both vehicles was a significant issue. Despite this, neither the

3

prosecutors nor the agents notified defense counsel that the agent's vehicle had been released or repaired.

**A Hearing is Warranted Regarding The Mishandling of the CBP Vehicle.**

The government's attempt to short circuit this hearing because they have turned over a few self-serving reports authored by the same people who mishandled the evidence in this case should be denied outright. There are many questions that need to be asked regarding not only what happened to this vehicle during the 25 days it was out of the FBI's chain of custody, but also as to the motivations of the parties who asked for the evidence to be released and later repaired.[4]

Ms. Martinez's claims regarding this issue which will be further articulated to the Court at the hearing are based on two separate arguments. First, the failure to preserve the only physical evidence available to impeach the Border Patrol Agents testimony regarding their claim that Ms. Martinez rammed their vehicle resulted in the destruction of impeachment evidence and would be a clear *Brady* violation.[5] *See United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), "[i]mpeachment evidence ... as well as exculpatory evidence, falls within the *Brady* rule," id. at 676, *citing Giglio v. United States*, 405 U.S. 150, 154, (1972), because

---

[4] As the Court will soon hear, there is strong evidence to demonstrate BPA 1's shooting of Ms. Martinez was a direct violation of CBP's use of force policy. BPA 1's justification for the shooting rests in part on the "ramming" of his vehicle and thus he is obviously under great pressure to ensure that nothing interferes with his version of events regarding the "ramming." Once again, BPA 1's motivation in seeking such a quick repair of the CBP Vehicle is certainly worthy of exploration at this hearing.

[5] The defense will highlight the significant alterations done to the CBP Vehicle at the hearing and disputes the government's Karate Kid wax on, wax off narrative in its response. (Response, at 5).

4

("[s]uch evidence is 'evidence favorable to an accused' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.)" *Id.*

Second, Ms. Martinez believes there are ample grounds to establish bad faith, which she cannot do without a hearing. A hearing will determine why a 23-year veteran Border Patrol Agent, who presumably was trained on evidence preservation issues repeatedly throughout his career sought to remove his vehicle from the FBI Evidence Garage and later actively requested the damage be "buffed out" all while he was at the center of a high-profile case based on the alleged ramming of his vehicle.

A hearing will also allow for exploration of why the FBI would take forensic evidence of paint chips from the CBP Vehicle and then not maintain the Vehicle for further forensic testing by the defense as they do in almost every other case.

Additionally, based on newly tendered discovery, it appears that a member of the United States Attorney's Office with significant experience in handling high-profile investigations authorized the release of this critical evidence. This AUSA has a prior background as a police officer which would have presumably further inform his knowledge regarding the necessity to preserve evidence such as this. The circumstances surrounding this critical and imprudent decision by the AUSA, including both the timing of the reports documenting the decision and lack of substantive information in the reports, raises further questions regarding the motivations surrounding the decisions made in this case and the defense is entitled to further exploration of these critical issues.[6]

---

[6] It is worth noting that this case was (and continues to be) cited by the Government in support of its seeking of the National Guard being needed in Chicago. The claimed "ramming"

While the defense is now forced to accept the government's photographs regarding the damage to the CBP Vehicle, this Court is not forced to accept the one-sided narrative of events the Government put in its response. The Court can allow this hearing to move forward and for the truth seeking process our justice system stands on to continue.

We respectfully ask this Court to allow BPA 1 to be examined regarding his actions regarding the removing of his vehicle from evidence and its later repair work that he requested to be done. We also request that the AUSA who allegedly authorized the release of the CBP Vehicle be present at tomorrow's hearing for examination by the defense.

Respectfully submitted,

/s/ Christopher V. Parente
**Christopher V. Parente**
Attorney for Ms. Martinez

**Cheronis & Parente LLC**
140 S. Dearborn Street, Suite 404
Chicago, IL 60603
(312) 663-4644
cparente@cheronislaw.com

---

incident at the center of this case goes far beyond a typical 18 U.S.C. §111 case in this District and the surrounding national issues certainly color some of the issues raised in this Motion and also could be used to support a bad faith finding by this Court once the facts are known.