IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) Case No. 25 CR 636-1 and 2
v.
MARIMAR MARTINEZ and ANTHONY IAN SANTOS RUIZ, ) Chicago, Illinois
Defendants ) January 29, 2026 9:30 a.m.

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE GEORGIA N. ALEXAKIS

APPEARANCES:

For the Government: HON. ANDREW S. BOUTROS
UNITED STATES ATTORNEY
BY: MR. RONALD DE WALD
MR. AARON BOND
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

For Defendant Martinez: CHERONIS & PARENTE LLC
BY: MR. CHRISTOPHER V. PARENTE
140 South Dearborn Street, Suite 404
Chicago, Illinois 60603

For Defendant Ruiz: FEDERAL DEFENDER PROGRAM
BY: MR. JACK CORFMAN
MR. BENJAMIN HORWITZ
55 East Monroe Street, Suite 2800
Chicago, Illinois 60603

Court Reporter: JENNIFER COSTALES, CRR, RMR, CRC
Official Court Reporter
219 S. Dearborn Street, Room 1714
Chicago, Illinois 60604
(312) 435-5895
jenny.uscra@yahoo.com

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURTROOM DEPUTY: 25 CR 636, USA versus Martinez.

THE COURT: Good morning. Why don't we start with appearances from the government.

MR. DE WALD: Good morning, Your Honor. Ron DeWald, D-E-W-A-L-D. Aaron Bond is caught in a different courtroom. He may be joining us in progress, but we do not have to wait for him. But he may also appear on behalf of the United States.

THE COURT: Okay. Thank you, Mr. DeWald.

And for Ms. Martinez.

MR. PARENTE: Good morning, Your Honor. Chris Parente for Ms. Martinez.

And she did want me to express her regrets to the Court. She's unable to get any more time off of work based on the amount of time she missed for the hearings until the government dismissed the indictment. So she wants to be here. She's actually angry that she's not here. But I told her it's not obviously worth losing her job at this point. And if Your Honor wants to hear from her, we will have her here.

THE COURT: Okay. And for Mr. Ruiz.

MR. HORWITZ: Good morning, Judge. Ben Horwitz, H-O-R-W-I-T-Z, along with Jack Corfman of the Federal Defender Program on behalf of Mr. Ruiz.

THE COURT: Good morning.

All right. So we are here on Ms. Martinez's motion to modify the protective order.

First question is for the government.

Good morning, Mr. Bond. Mr. DeWald previewed your appearance.

MR. BOND: Thank you. Apologies. I was before Judge Tharp.

THE COURT: So is the motion opposed?

MR. DE WALD: It is, Your Honor, for much of the same reasons as we filed in our response to the intervenor's motion. But there are a little different analysis here that we were asking -- we would like to ask for one week to respond in writing.

THE COURT: Can you give me a preview of your arguments?

MR. DE WALD: Yes, Your Honor. I mean, there are other equities at play here. And as we said in our response to the intervenor's motion, the protective order here followed the standard form that we have used in other criminal cases in this building, and so we wanted to take a thoughtful approach to how we respond to that.

There is also other --

THE COURT: What do you mean by that? Because the motion just made a generic reference to sensitive materials.

MR. DE WALD: Correct, Your Honor.

THE COURT: So it wasn't in any way specific to this case.

MR. DE WALD: Correct. And we have used that type of motion and order in other cases, and I wanted to make sure --

THE COURT: Right. But what were the sensitive materials that you were contemplating would be produced in this case?

MR. DE WALD: In this case, so in this case it's the same things we talked about in the intervenor's response, which would include privacy interests for, say, agent number 3 and his body-worn camera, where it captured certain things on his, what we believe to be his personal phone. That should not be presented to the public. We gave it to the --

THE COURT: Go ahead, Mr. DeWald.

MR. DE WALD: We gave it to defense counsel under a protective order because defense counsel wanted that body-worn camera as soon as possible. And there were other things as well that we have tendered that we just want to make sure that we have a full accounting as to what's been sent over there.

So that's not only case --

THE COURT: But which factor would that implicate of the four-factor analysis?

MR. DE WALD: Yeah, so the four factors we have are the protective order itself. So we would discuss that. And

it's also whether or not there is good cause and reliance, because we relied upon the protective order in place that the defense counsel agreed to when we --

THE COURT: Right. But the arguments that you're making seem to go to reliance. And so what I'm asking is, you can do this in writing, but I'm going to need to know specifically what is it that you would not have produced absent the protective order that you're counting on the protective order at this time to shield from public view? And it can't be --

MR. DE WALD: Understood.

THE COURT: -- a blanket classification of documents. It needs to be quite specific because --

MR. DE WALD: I understand.

THE COURT: -- because I think Mr. Parente makes an excellent point in his motion when he says that a lot of these materials are materials that the government would have had to produce if, for example, it had been an opposed motion for protective order and Magistrate Judge McShain had entered the order regardless or had denied the motion for entry of a protective order.

MR. DE WALD: Agreed, Your Honor. However, timing also is a factor here as well, would the government have given that type of material to the defense counsel at the time we did, right. So that's another aspect that we're looking at to

argue to the Court.

Then there is other inequities too or other equities to be considered too, other privacy interests of other witnesses in this case, including the subject of the ongoing and pending criminal investigation. And so these are things that we want to be able to present to you, to Your Honor.

There is also that good cause analysis, good cause analysis, factor number 4. Now we have specific responses to defense counsel with respect to the DHS press releases that counsel is suggesting are still being issued today. And our analysis of this, that these are all the same press releases that were back on the day of the incident and the day after the incident, things that defense counsel knew about when he entered into the protective order to begin with.

THE COURT: But they're still available?

MR. DE WALD: They are still available, yes, Your Honor, but I --

THE COURT: DHS has not scrubbed them from their website, from their own website?

MR. DE WALD: I'm not sure they can. I mean, I don't know if it's a government --

THE COURT: From their own website?

MR. DE WALD: I don't know if it's a government record or something along those lines. These are the things that I don't know, whether or not there has been any --

THE COURT: Have they issued a corrective statement?

MR. DE WALD: That, I don't know, Your Honor. But that's the --

THE COURT: Have they issued a press release saying that the indictment was voluntarily dismissed with prejudice by the government?

MR. DE WALD: I don't believe so.

THE COURT: Did they tell the Supreme Court that in their filings in the Illinois National Guard case?

MR. DE WALD: I believe the filings were done before the case was dismissed.

THE COURT: Did they supplement their representations?

MR. DE WALD: Not to my understanding.

THE COURT: Did they ask the Supreme Court to correct its opinion when Justice Alito represented these facts --

MR. DE WALD: I don't know.

THE COURT: -- as found as determined? Did the government do that?

MR. DE WALD: I don't believe so, Your Honor.

THE COURT: Okay. And yet you still think that there is good cause here for the government to maintain a blanket protective order?

MR. DE WALD: We would like to respond. So at this time, counsel, we were discussing whether or not we can come

to any kind of agreement. At this time I'm unable to say that we've come to the agreement, any agreements whatsoever. And I would like an opportunity to respond in writing, yes, Your Honor.

THE COURT: Okay. I will give you that opportunity.

MR. DE WALD: Thank you.

THE COURT: I'm not giving you a week. You can have until end of day Monday.

MR. DE WALD: Very well. Thank you, Your Honor.

THE COURT: Okay. Mr. Parente, is there anything that you would like to say at this time?

MR. PARENTE: There are, Judge. First, this refrain that they repeated a few weeks ago and they're repeating now about an ongoing and pending criminal investigation, they're saying it, but I'm on the other side of it. They have Ms. Martinez's car. They can't do anything until we sign a form, and they won't send me the form.

So to me, to keep saying there is an ongoing criminal investigation, and they're not doing the things that you would need to do to actually investigate this agent for the unlawful shooting of Ms. Martinez, you know, we've seen this with this administration, they say one thing, and they don't do anything, and I have no control over it.

So I don't want them to be able to use that again, because I have been calling this prosecutor almost every day

asking to send me the form so that the FBI can do the work that they would actually need to do if there really was an ongoing criminal investigation.

I get no call back. I have to go to Mr. DeWald. Then maybe I'll get a call back. Maybe I'll get the form the next day. And it's been weeks. It's been weeks. And as Your Honor knows, these investigations, they have to move quickly if they're going to happen, and they're not doing it.

So here they come before the Court and say there is an ongoing criminal investigation into Agent Exum. But I know that they can't do anything with that until they actually look at the car, which will show that the bullet was fired from behind, and they haven't sent me the form yet. It's a one-page form. I told him I would sign it as soon as he sent it to me. And he won't send it to me, and he won't return my calls.

So don't keep -- I don't want them to be able to use that as a means to stop this.

THE COURT: Well, let me just interject. I don't know what this investigation is. I'm not asking for any public representations of an ongoing investigation. I will say though that if the government is going to rely on an ongoing investigation to justify the nonmodification of the protective order, I'm going to need a lot of detail about that investigation. And I'm going to need it spelled out for me as

to what specific material needs to remain under seal or out of the public's view as a result of this investigation.

And I will give you leave to file any such argument under seal. But, again, I'm stressing that it needs to be quite specific: The investigation is about X. The material at issue is Y. The reason why Y material, it's public dissemination would negatively affect, intrude, interfere with X matter is and followed by incredibly specific language.

MR. DE WALD: Understand, Your Honor. Just as a reminder, this is a different office that's investigating.

THE COURT: Understood. It's still the government.

MR. DE WALD: Okay.

THE COURT: All of this is, this is still the government.

MR. DE WALD: Completely understand that.

THE COURT: Okay.

MR. DE WALD: But I'd just point out that defense counsel says he maybe received the form the next day. My understanding is when counsel reached out to me, just within 10 days ago about whether or not anything that's happened since then in different states has had any impact whatsoever, I helped him reach out and make contact with the prosecutor. My understanding is they're having the conversations and that it's ongoing. That's all I can share at this point because I'm not a part of that investigation.

But I'll have the answer for the Court to the extent that I can get it.

THE COURT: Okay.

MR. PARENTE: And the other, another point, Judge, that Mr. DeWald mentioned is that these are old press releases and that we knew about them. This is not true.

So the problem is every time Ms. Martinez makes a statement about what happened, which is of national interest based on the two executions we've seen in Minnesota, she is feeling this every time it happens, so she's giving these statements, and the press, because that's their job, they then go to the government for a response, and Tricia McLaughlin, the Assistant Secretary of DHS, repeats this same refrain, that she's a domestic terrorist, that she rammed the vehicles and that she drove at the agent.

We know that the discovery in this case would show that's not true. And so Tricia McLaughlin is protected by the government's protective order. She's repeating this refrain as recently as last week, and she will continue to repeat it any time the press calls her, and our hands are tied.

And that's just not fair to Mrs. Martinez, to not be able to show, if they can see the discovery and see the photographs that the government took that would show the bullet coming out of the front of the car seat, that of course she wasn't driving at him. It's impossible to shoot someone

from behind if they're driving at you.

So it's concerning that people at that high a level of the government would say certain things when these prosecutors and this office knows that in the discovery that we're not allowed to talk about, there is things that directly contrast that.

THE COURT: I understand that you're -- I understand the severity of the situation, or I should say I understand the high stakes of the situation, and that is why I want to move as expeditiously as possible to resolve this situation.

I will also say that in December, when I denied the proposed intervenor's motion to intervene and for related access to judicial records, I did say as part of my ruling that no one had pointed me to a willing speaker who was being stymied by the protective order, and that if a motion to modify the protective order was put in front of me, that would be a different legal analysis that I would conduct.

And so it seems like circumstances have changed in that regard, and we do now have a willing speaker who is being -- whose position is that she's being stymied by the protective order.

So I understand that, Mr. Parente, and that's why I want to resolve this as quickly as possible, because if you are right, then there is ongoing harm to Ms. Martinez.

MR. PARENTE: There is, Judge. And, again, I want to

make this clear, that, you know, it's upsetting that it took two more killings to change it. But, you know, she is, she is watching this, as we all are. And she didn't want to be a speaker. She doesn't -- you know, she wants to go back to her normal life. But she is seeing what's happening, and she knows that could have been her so easily. And that has changed her desire to push back on things that she probably wouldn't have honestly but for what happened in Minnesota.

So it's that -- it's not only the defamation of her, but she also sees by surviving, she was entitled to certain things that the Good family and the Pretti family aren't entitled to, and she feels a responsibility to put that out there.

And Your Honor sort of sees the statements of the administration, again, including as of yesterday, that it's standard procedure that these agents be put on administrative leave after a shooting. You saw Exum testify. You know that's not true in this case. And there is documents in this case that you I think are aware of that would show the public and Congress as they decide whether to fund this agency whether that's true or not.

And so under that fourth prong of good cause, it's not only the personal defamation of Ms. Martinez, but it's like the public good, when our government is saying one thing in front of the cameras, and there is documents in this case

that arguably would refute that.

And so we're making sort of a two-prong argument. It's her personal defamation, and as a citizen who survived one of these shootings, she feels a duty to not be silenced about what she knows is in the record in our case.

MR. DE WALD: So --

THE COURT: I'm sorry. Before I go back to you, Mr. DeWald, I do want to make sure I understand what Mr. Ruiz's position is on Ms. Martinez's motion.

MR. HORWITZ: Thank you, Judge. Mr. Ruiz is not taking a position on the motion, Judge.

THE COURT: Okay.

MR. HORWITZ: Thank you.

THE COURT: All right. Mr. DeWald.

MR. DE WALD: So counsel just argued about things that he wants into the public record. What he cited was officer -- Agent Exum's testimony, which is already in the public record. The things that he is citing to is already in the public record.

His 60 Minutes or her 60 Minutes interview included the defendant's photographs of the car. So everything he just said about having the bullet hole in the side of the car, things he's already been able to present that otherwise.

And as far as the concept of ramming that he is saying in his motion, that this is not a ramming, Agent Exum

on the stand in public acknowledged this was not a ramming.

And as far as the ten cars that were surrounding -- that in the DHS press release from back on October 4th, the day of the incident, the videos that defense counsel has, but did not tender to the government, shows that there is no other cars surrounding it.

So the things that he's saying that his client has been prejudiced by are rebutted already by what defense counsel has. And the press releases that --

THE COURT: Well, they're rebutted by his public statements of what his understanding of the facts are, which is very different than just playing the video and letting people make up their own minds about what the video shows.

MR. DE WALD: But the video doesn't capture the actual shooting itself, and so that's the concern. So it's whatever he is going to share with this is not what defense counsel is suggesting to the Court right now.

And when we talk about the press release, the press release refers to a Seventh Circuit opinion that was issued the week that this case was dismissed. So this is the same press release that even though it's being recycled and shown and then rebutted by defense counsel in all of the interviews that he's doing, these are things that are not new press releases. And that's just the point that the government wants to make is --

MR. PARENTE: That's not true.

THE COURT: No, Mr. Parente. Let Mr. DeWald finish.

MR. DE WALD: And so these are the reasons why we wanted to file a response, to be able to document this good cause.

And like I said, this is a technical objection. It's the concept of --

THE COURT: What do you mean by that?

MR. DE WALD: Well, as we've acknowledged in the response to the intervenors, that there is other ways to get this material, through FOIA, through other places, and that this is a protective order that's in place, and we wanted to give a thoughtful response as it connects to other cases. That's the reason. And so we just want to be able to lay out our argument for good cause and everything else. So that's what we mean by this.

And if we can come up with this agreement based upon this conversation or this status hearing in the meantime, we'll do that as well. We'll continue to do, every step of the way to do the proper analysis for this case.

THE COURT: Okay.

MR. PARENTE: Judge, so much of that was not true. One, if Mr. DeWald would have that conversation with Tricia McLaughlin, I would appreciate it, Mrs. Martinez would appreciate it, because I think that would stop a lot of this

nonsense. And so I would encourage you to do that if truly believe there was no ramming, and that she didn't drive at him and all the other things you just said --

THE COURT: Mr. Parente, you can address your comments to me and not to Mr. DeWald.

MR. PARENTE: I would ask him to do that because that would help.

And she's not just regurgitating the same press release. But even if she were, she is the Assistant Secretary of DHS, and it would be regurgitating facts that you now know are false. Why is that okay? That's not what --

THE COURT: I do say I find it -- I'm hard-pressed to credit the idea that DHS couldn't change the narrative around this incident if they set their mind to it. And as far as what I've been presented with as well, it's not just DHS, it's the FBI director who is also participating in this ongoing narrative.

And was this an FBI investigation?

MR. DE WALD: It was, Your Honor, but --

THE COURT: That was an FBI agent who was sitting at the table during the earlier evidentiary hearing, correct?

MR. DE WALD: Correct.

THE COURT: An agent who reports to Mr. Patel?

MR. DE WALD: Correct.

THE COURT: Okay.

MR. DE WALD: And that, my understanding, whatever that Tweet or whatever we're calling it now, the X post was back on October 5th or something way back when when it was initially --

THE COURT: It has been taken down?

MR. DE WALD: It --

THE COURT: There are ways to delete Twitter Tweets, X posts, again, whatever we are calling them, there are ways to do that, correct?

MR. DE WALD: Correct. Well --

THE COURT: Okay.

MR. DE WALD: I say correct because I assume there is. I don't know. But I --

THE COURT: You and I can be dinosaurs together, Mr. DeWald.

MR. DE WALD: Correct.

THE COURT: But I'm pretty sure that there is a way to do that.

MR. DE WALD: Yeah. And, you know, as far as what counsel seems to be looking for is a recantation of the statements that were issued by DHS. And that's something separate from taking off a protective order that he agreed to and letting everything in the discovery --

THE COURT: You're saying that --

MR. DE WALD: -- to be sent into the public realm.

THE COURT: Yeah, I will say I understand you to be saying or to be arguing that defense counsel is asking for something unusual. And I guess I would say that I find it, regardless of whether or not I agree with that characterization, and I'm not sure that I do, I also think that we're finding ourselves in an unusual situation in which the government made exceedingly public statements about a criminal defendant, who under our American system of justice is presumed innocent, and have made no efforts to equally publicize the fact that they abandoned the opportunity to convict her, to try to convict her in a court of law, even though that's completely within their power to do that.

So I will await your response. But when you go back and put pen to paper and think about that response, I also want you to think long and hard about the comments that I've made today.

MR. DE WALD: A hundred percent, Your Honor. We heard it loud and clear. And this gives us opportunities to have further discussion in the meantime.

THE COURT: Okay. I will say for the record, no one has flagged this so far, I do want to make sure that I put this out there, that there is a pending notice of appeal in this case based on my denial of the proposed intervenor's motion to intervene.

MR. PARENTE: Judge, I can address that now. If you

want the government to do it, that's fine.

THE COURT: Well, I guess, well, I assume you are going to tell me, Mr. Parente, that I haven't been divested of appellate -- of jurisdiction because of the notice of appeal?

MR. PARENTE: That's my position, yes.

THE COURT: And what are your reasons for that, Mr. Parente?

MR. PARENTE: Well, they're appealing your order not letting them intervene. This is separate. We're moving under the initial protective order in which it calls for modification by the Court. So it's kind of separate from their appeal. So we believe that you're not actually divested because this is a different subject matter. But they can brief that if they want to. And hopefully we can work it out.

Again, to his first point about PII, we have no interest in putting out agents' names or phone numbers or relatives. We just want the information.

And to his point about we put all that out there in 60 Minutes, I can assure Mr. DeWald I spend numerous amounts of time with Ms. Martinez before these interviews giving her the list of the 15 things I would love for her to be able to say that she cannot say because we're complying with the protective order.

So there is plenty of stuff that is still protected that the press should know, that the American people should

know that I have done my job and make sure she does not reference in these interviews, even though it is extremely timely and would rebut many of the things that the administration is currently saying.

THE COURT: Mr. DeWald, does the government take a different position as to my ability to adjudicate this particular dispute given the pending appeal?

MR. DE WALD: So that was one thing that we wanted to do a little bit more work. But our initial assessment is the same as Mr. Parente's, is that because this is a party now seeking to modify the protective order, that this is separate and distinct from the issue that's in front of the appellate court with respect to the intervenor's motion.

THE COURT: Okay. My initial assessment led me to the same conclusion. It also seemed to me that it's not necessarily clear that granting -- if I were to grant Ms. Martinez's motion, that it would obviate or moot the appeal, because granting her the relief that she's requesting doesn't actually compel her to turn over all the things that the proposed intervenors want to them or to those particular entities that are represented by the proposed intervenors. But if you want to address that further in your written response, I will take it.

Okay. So then let's talk about, if I get the response on February 2nd, are the parties available on

February 4th for what I anticipate would be a ruling?

MR. DE WALD: The government is available.

THE COURT: Mr. Parente?

MR. PARENTE: The 5th, Judge, would be ideal, even though I would prefer -- I anticipate Ms. Martinez will be testifying in DC regarding some of these matters. And so we won't be back until the 4th.

THE COURT: You won't be back until the 5th?

MR. PARENTE: We'll be back on the 4th like in -- I guess we could do it late in the day on the 4th, like 3:00 or 4:00 o'clock.

THE COURT: That would be fine with me. 3:30, would that work?

MR. DE WALD: 3:30 on the 5th?

MR. PARENTE: That works, Judge.

THE COURT: 3:30. I'm sorry, are we talking about the 4th or the 5th?

MR. PARENTE: The 4th.

THE COURT: 3:30 on the 4th, does that work for the government?

MR. DE WALD: Yes, Your Honor.

THE COURT: Mr. Horwitz?

MR. HORWITZ: That's fine, Judge. Thank you.

THE COURT: Okay. 3:30, February 4th.

If the parties do reach an agreement, I would expect

to have a proposed modified protective order.

MR. PARENTE: And just so you know, and to Mr. DeWald's credit, I reached out immediately, and I thought we could work it out. He thought we could work it out. We can't yet work it out. But we are more than willing to redact anything that they want redacted as far as PII.

THE COURT: Understood. All right. Thank you.

MR. DE WALD: Thank you, Your Honor.

(Proceedings concluded at 9:56 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Jennifer Costales* *January 30, 2026*

______________________ ____________________

Jennifer Costales Date
Official Court Reporter