UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   25 CR 636-1 |
| v. | ) | |
| | ) | Judge Georgia N. Alexakis |
| MARIMAR MARTINEZ | ) | |

### GOVERNMENT'S RESPONSE TO MS. MARTINEZ'S MOTION TO MODIFY THE PROTECTIVE ORDER[1]

Miramar Martinez has moved to lift the protective order governing discovery in this case. For the reasons cited below, the government believes that the Media Parties' notice of appeal has divested this Court of jurisdiction to issue a final ruling on Ms. Martinez's motion.[2] Assuming *arguendo* that the Court has not been divested of jurisdiction to rule on Ms. Martinez's motion, the government respectfully requests that the Court deny Ms. Martinez's motion solely as to discovery pertaining to: (1) Flock and License Plate Reader ("LPR") cameras that is law enforcement sensitive; and (2) text messages between Agent Exum and his wife, brother, and co-workers which were either consistent with Agent's Exum's testimony in-court testimony on November 5, 2026, already contained in prior FBI reports of interview and/or on the

---

[1] The government filed this motion shortly after midnight on Tuesday February 3, 2026, shortly after the Court's February 2, 2026 deadline, and therefore seeks leave of the Court to file the instant response brief instanter.

[2] As referenced in the government's response brief to the Media Parties' motion to intervene (R. 89), the "Media Parties" collectively refers to the American Broadcasting Companies, Inc. ("ABC"), the Washington Post, Chicago Tribune Company ("Tribune"), and Chicago Public Media, including the Chicago Sun-Times ("CSTM") WBEZ, and CBS Broadcasting Inc. ("CBS").

body-worn camera recordings, or contain statements of others who did not witness the incident that resulted in criminal charges in this case.[3]

## I. BACKGROUND

The procedural history of this case is described more fully in the government's response to the Media Parties' motion to intervene for access to judicial records and to modify the protective order. R. 89. However, in summary, in November 2025, several media parties moved to intervene in this closed criminal case for the purpose of modifying the protective order and seeking access to records associated with the case. More specifically, the proposed intervenors requested that the Court "modify the protective order and allow the distribution of the body-worn camera footage and other evidence to the press." (Dkt. 74 at 12).

The Court denied the proposed intervenors' motion, finding that the intervenors did not have standing to intervene because the "press has suffered no injury to a legally-protected interest." (Dkt. 95 at 17). The Court further found that the First Amendment did not provide the proposed intervenors with standing given

---

[3] The government does not object to modifying the protective order as it pertains to the majority of what Ms. Martinez's counsel has requested from the government, provided that certain additional redactions are made to protect the privacy interests of witnesses, agents, and attorneys. Specifically, the government does not oppose modifying the protective order as it pertains to: (1) body-worn camera ("BWC") recordings of Agent Exum (previously referred to as "BPA 1" in the criminal complaint), BPA 2, and BPA 3; (2) all FBI reports of interviews of Agent Exum and BPAs 2 and 3; (3) photographs and associated reports by FBI's Evidence Response Team; (4) Ms. Martinez's 911 call; and (5) FBI reports regarding Ms. Martinez's custody and medical treatment.

Additionally, after conferring with the government attorneys working the separate but related ongoing criminal investigation previously described in the government's response to the intervenor's motion and in open court, the government will not make any additional submission detailing the investigation and does not now rely on its existence to justify its opposition to the Ms. Martinez's instant motion.

that they could not clearly establish the existence of a "willing speaker" who would provide them with the information they seek but is unable to do so because of the protective order. (*Id*. at 17–18). Following the denial of their motion, the proposed intervenors filed a notice of appeal, (Dkt. 96), which remains pending in the Seventh Circuit.

Six days later, on January 26, 2026, Ms. Martinez filed her own Motion to Modify the Court's Protective Order, seeking "to allow for Ms. Martinez and her counsel to disclose case materials in their possession to the public." (Dkt. 100 at 1). More specifically, Ms. Martinez and her counsel seek the Court's permission to share case materials with the public to contradict ongoing press releases from the Department of Homeland Security ("DHS") that contain "misinformation from the federal government about her case" and, in light of recent events in Minnesota, to educate "the public and elected officials" to understand "how DHS responds in cases where their agents use deadly force against U.S. citizens." (Dkt. 100 at 1-2). Although not specifically alleged in Ms. Martinez's motion, the government understands that the case material that Ms. Martinez seeks to disclose to the public is the same or similar to the material that the Media Parties requested access to in their Motion to Intervene.

## II. ARGUMENT

### A. The Media Parties Appeal Has Divested this Court of Jurisdiction to Issue a Final Ruling on Ms. Martinez's Motion

At the hearing held on January 29, 2026, the Court flagged "that there is a pending notice of appeal in this case based on [its] denial of the proposed intervenor's

3

motion to intervene." (Tr. 19:22–24). Both counsel and the Court discussed their initial assessment that the notice of appeal does not divest this Court of jurisdiction because the appeal concerns intervention and because this is a party now seeking to modify the protective order. (Tr. 20:2–21:15). The Court added that it is "not necessarily clear" that granting Ms. Martinez's motion "would obviate or moot the appeal, because granting her the relief that she's requesting doesn't actually compel her to turn over all the things that the proposed intervenors want to them or to those particular entities that are represented by the proposed intervenors." (Tr. 21:15–21). Upon further review, the government believes that the pending appeal has divested this Court of jurisdiction—that is, authority—to issue a final ruling on Ms. Martinez's motion.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "This rule conserves judicial resources by preventing overlapping and potentially inconsistent decisions." *Ameritech Corp. v. Int'l Bhd. of Elec. Workers, Loc. 21*, 543 F.3d 414, 418 (7th Cir. 2008). Neither a complete identity of issues, nor a risk of mootness, are conditions precedent to a district court declining to exercise its authority to reach a decision. *See In re Teknek, LLC*, 563 F.3d 639, 651 (7th Cir. 2009) (considering whether matters were "integral" to the appeal and how "close" their relationship was); *United States v. Ienco*, 126 F.3d 1016, 1018 (7th Cir. 1997); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989). To

4

ascertain its decisional authority, a district court must ultimately ask itself whether the aspects of the case before it are "those aspects of the case involved in the appeal." *May v. Sheahan*, 226 F.3d 876, 880 (7th Cir. 2000). The answer "depends on practical rather than formal considerations." *Apostol*, 870 F.2d at 1337.

The government acknowledges that the Court denied the proposed intervenors' motion on standing grounds, not on the merits—a basis distinct from the present motion; however, the pending appeal ultimately encompasses the ongoing vitality and scope of the protective order, so the order and the proposed modifications are indeed "those aspects of the case involved in the appeal." *Sheahan*, 226 F.3d at 880. It is clear from the motions themselves that the proposed intervenors are seeking modifications of the protective order, which are at least partially overlapping as to the modifications requested by Ms. Martinez. To be sure, the government recognizes, just as the Court did on the record, that the proposed intervenors may want more materials than Ms. Martinez does, and that Ms. Martinez may not want to turn over anything, let alone everything, to those specific media outlets as opposed to others. The government also appreciates that this is a party making the request now and not just a nonparty or proposed third-party, which may impact not only the merits of a motion to modify the protective order, but the evaluation of the proposed intervenors' standing on First Amendment grounds. As a practical matter, the media's intervention is "inextricably tied" to modifying the protective order. *Apostol*, 870 F.2d at 1338. It is not dispositive to the analysis who is seeking the modification and if a partial modification would satisfy those seeking it.

Instead, the analysis rests on whether the protective order, and the prospect of modifying it, are "discrete matter[s] ancillary to the issues under consideration in the other court." *Sheahan*, 226 F.3d at 879. At this post-judgment stage of litigation, any contemplated modification is the "nub of the case." *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995). Should the court of appeals find that this Court erred in denying the media relief, that would almost certainly result in a modification of the protective order, which means that this Court is functionally considering a modification of the same order under review in the court of appeals. In such circumstances, this Court should not exercise any residual authority to grant the relief requested by Ms. Martinez due to the real possibility that it would substantially alter the issues or otherwise interfere with the appeal. *See MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 923 (7th Cir. 2019) (district court should not "substantially alter the issues[] while appeals are pending"); *Boyko v. Anderson*, 185 F.3d 672, 675 (7th Cir. 1999) (district court should not "interfere with or threaten to duplicate the appellate proceedings").

That this Court should not exercise its authority *now* to grant Ms. Martinez relief given the media's pending appeal does not mean that this Court should *never* proceed to do so. Even if this Court does not deny the motion or defer its consideration indefinitely, it can still enter and continue the motion until such time that the court of appeals may remand for further proceedings, whether that be sooner or later. *Cf.* Fed. R. Crim. P. 37(a); Fed. R. App. P. 12.1. It remains inefficient to have the court of appeals effectively contemplating modifying the protective order at the same time as

6

this Court. The court of appeals will be weighing the public and private interests in confidentiality, and if this Court grants Ms. Martinez relief, it risks getting in front of the policy choice that the court of appeals will inevitably be making. *See, e.g.*, *United States v. Brown*, 732 F.3d 781, 787 (7th Cir. 2013) (purpose of rule is "to preserve the integrity of the appeal process") (citation omitted). Accordingly, this Court should decline to exercise any authority to decide Ms. Martinez's motion in its current procedural posture.

> **B. Ms. Martinez Has Not Established Good Cause to Modify the Protective Order as it Pertains to Flock and LPR Camera Material or Agent Exum's Private Texts with His Wife, Brother, and Co-workers.**

Federal Rule of Criminal Procedure 16(d)(1) authorizes courts to issue protective orders governing the discovery of materials in federal criminal cases, as follows:

> (d) Regulating Discovery.
>
> (1) Protective and Modifying Orders. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Notably, the plain language of Rule 16(d) neither requires nor precludes the issuance of a protective order under specific circumstances. Rather, the Court retains discretion to issue a protective order upon a showing of "good cause." *Accord Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[A] trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders

7

against unwarranted disclosure of the materials which they may be entitled to inspect.").

When the government moves for the entry of a protective order, the government bears the burden of demonstrating "good cause" under Rule 16(d). *United States v. Isa*, 413 F.2d 244, 248 (7th Cir. 1969). To *modify* a Rule 16(d)(1) protective order, courts have used the same standard applicable in the civil context. *United States v. Morales*, 807 F.3d 717 (5th Cir. 2015). This standard generally assigns the party seeking relief the burden of showing good cause to modify or vacate the existing protective order. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018). *See also Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated."). Courts consider the following four factors to resolve motions to modify protective orders: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer, GmbH,* 807 F.3d at 565. Here, the government focuses its arguments on the fourth prong of "good cause."

      i.    **Flock and LPR Cameras**

Discovery tendered to Ms. Martinez in the instant case included still photo images obtained from Flock and License Plate Reader ("LPR") cameras located throughout the city and suburban Chicago area. Initially, the government notes that the LPR discovery does not pertain to Ms. Martinez's vehicle and instead involves

8

information related to three vehicles of interest that were associated with individuals not a party to the instant case. As such, Ms. Martinez cannot show good cause for modification of the protective order as it pertains to the LPR discovery.

Based upon conversations with law enforcement, Flock and LPR cameras are tools utilized to assist in finding the location of an individual or person of interest, as opposed identifying criminal conduct. The devices are considered law enforcement sensitive ("LES"), meaning that they use of investigative data, techniques, strategies, or other such details, that bear significant relevance to the safety and security of the general public or specific individuals. LES is often marked "For Official Use Only ("FOUO") and is specifically designated for use by authorized personnel only.[4] Unauthorized release of this material is considered detrimental because it can jeopardize investigations, endanger personnel, or compromise public safety.

In the instant case, the Flock and LPR camera discovery, if publicized, would be detrimental to law enforcement interests in that the still photos tendered in discovery may reveal the location of numerous Flock and LPR cameras that are utilized by law enforcement, thereby causing harm to future law enforcement investigations and potentially compromising public safety.

###  ii. Agent Exum's Text Messages with His Wife, Brother, and Co-Workers

Discovery tendered to Ms. Martinez in the instant case included text messages between Agent Exum and his wife, Agent Exum and his brother, and Agent Exum

---

[4] The FBI report associated with the Flock camera discovery in the instant case is marked "FOUO." The LPR camera discovery is not marked in this fashion.

9

and his co-workers, taken from Agent Exum's personal telephone. These messages were produced pursuant to the Jencks Act in anticipation of Agent Exum's testimony during the November 5, 2025 evidentiary hearing before this Court. Ms. Martinez has not shown good cause to modify the protective order with respect to these text messages.

These text messages produced pursuant to Title 18, United States Code, Section 3500, were private messages between Agent Exum and his wife, brother, and co-workers in Maine. Five of the text messages were made public when they were entered into evidence during the November 5, 2025 evidentiary hearing. The remaining text messages were either consistent with Agent's Exum's testimony during the evidentiary hearing, already contained in prior FBI reports of interview and/or on the body-worn camera recordings, or contain statements of others who did not witness the incident that resulted in criminal charges in this case.

As such, they have no bearing on the key basis that Ms. Martinez invokes in her motion, namely, her ability to have her voice heard in response to the DHS press releases. Indeed, the release of these messages after the charges against Ms. Martinez have been dismissed with prejudice will serve only to further sully Agent Exum, his family, and co-workers without any corresponding benefit to Ms. Martinez based on the stated reasons in her motion. In addition, Ms. Martinez has not articulated how these text messages would or could have been introduced at trial, further underscoring the irrelevance of the messages especially at this after-the-fact stage in the proceedings.

## III.     CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny Ms. Martinez's motion to modify the protective order where the Media Parties' notice of appeal has divested this Court of jurisdiction to issue a final ruling on Ms. Martinez's motion. In the alternative, should the Court find that it retains jurisdiction, the government respectfully requests that the Court deny Ms. Martinez's motion solely as to (1) Flock Camera and License Plate Reader ("LPR") discovery; and (2) Agent Exum's text messages; and require additional redactions to the discovery to protect the privacy interests of witnesses, agents, and attorneys.

        Respectfully submitted,

        ANDREW S. BOUTROS
        United States Attorney

By:    */s/ Aaron R. Bond*
        AARON R. BOND
        RONALD DEWALD
        Assistant United States Attorneys